230 So.2d 913 (1970)
Arthur L. JOYNER
v.
ALTON OCHSNER MEDICAL FOUNDATION, Ochsner Clinic, the Travelers Insurance Company and the Travelers Indemnity Company.
No. 3732.
Court of Appeal of Louisiana, Fourth Circuit.
February 2, 1970.
*914 A. J. Kling, Jr., Gonzales, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, New Orleans, for defendants-appellees.
Before SAMUEL, REDMANN and BARNETTE, JJ.
SAMUEL, Judge.
Plaintiff instituted this suit for damages following treatment in the emergency room of the Alton Ochsner Medical Foundation (referred to hereinafter simply as "emergency room") for injuries sustained in an automobile accident on May 11, 1965. Named defendants in the petition are the Foundation, Ochsner Clinic, and The Travelers Insurance Company and The Travelers Indemnity Company, their alleged insurers. The Travelers Insurance Company was dismissed from the litigation by summary judgment which is now final, no appeal having been taken therefrom. After trial on the merits there was judgment in favor of all remaining defendants, dismissing plaintiff's suit against them. Plaintiff has appealed.
In this court plaintiff contends there is liability on the part of the defendants because the Foundation and the Clinic: (1) failed to give him proper emergency treatment, and allowed him to suffer unattended, while he was in the emergency room for approximately four hours awaiting admittance to the hospital; (2) refused to admit him to the hospital for purely financial reasons after leading him to believe he would be admitted; and (3) failed to advise him immediately upon his arrival at the emergency room that he would not be admitted to the defendant hospital and that he should seek medical assistance elsewhere.
During the course of a two-day trial plaintiff offered the following witnesses: himself; his wife; his 14 year old stepson; the individual who drove the latter two persons to the defendant hospital from their residence in Prairieville, Louisiana; and a resident staff surgeon at the Veteran's Administration Hospital in New Orleans who treated plaintiff after he had been transferred to that institution. In addition to its emergency room records, defendants offered the following witnesses: a registered nurse assigned to the emergency room at the time plaintiff was brought in; the doctor in charge of the emergency room at that time; the associate director of the defendant hospital; and a surgeon who testified to the usual and established medical standards of hospitals and hospital emergency rooms in the New Orleans area and who gave his opinion, based on the aforesaid records, as to *915 the type and sufficiency of treatment received by plaintiff.
We find these facts from the record as thus constituted:
Following the automobile accident, which occurred near LaPlace, Louisiana, plaintiff arrived at the emergency room shortly after 6 p. m. He was brought there by ambulance unconnected with any of the defendants (neither the Foundation nor the Clinic had an ambulance) solely because the defendant hospital was the hospital closest to the scene of the accident. While plaintiff was in the emergency room the staff (two doctors and two nurses) was extremely busy taking care of approximately 14 emergency cases which arrived duing that time as well as several other patients who had arrived prior to that time.
Plaintiff's injuries consisted of multiple, deep facial lacerations, a possible head injury, traumatic damage to the teeth and multiple bruises and contusions of the body, resulting in considerable loss of blood. On admission he was put on a stretcher, a bandage of some kind was placed over his face, his blood pressure and pulse were taken and found to be in the upper normal limits, and he was sent to the x-ray room where fourteen different views were taken of his face, neck and other parts of his body.
Thereafter his blood pressure and pulse were taken periodically. The blood pressure progressively dropped from an initial 150/90 to a serious and dangerous 80/40 (at approximately 7:05 p. m.). Ringer's solution was given intravenously and additional blood pressure and pulse readings were taken and recorded at 7:25, 7:35, 7:50, 8:25 and 9:30. At approximately 9:05 demerol, a pain relieving medication, was given plaintiff by the treating nurse. Tetanus toxoid also was given to prevent infection. At approximately 10 o'clock, or very shortly thereafter, plaintiff was removed to the Veteran's Administration Hospital where his injuries were treated.
Plaintiff's wife arrived at the emergency room shortly after 8 o'clock. She testified plaintiff, in her opinion, was allowed to lie on the stretcher without proper attention and without being given medication for relief from pain. Essentially the same testimony was given by the two plaintiff lay witnesses who accompanied Mrs. Joyner, plaintiff's stepson and the man who drove them to the hospital. Mrs. Joyner further testified she had some discussions with an attendant and one of the doctors in the emergency room regarding admitting plaintiff into the defendant hospital, she was asked for a $100 deposit for that purpose, and at her request plaintiff was transferred to Veteran's Administration Hospital. At 8:50 p. m., in response to Mrs. Joyner's request, a doctor at the defendant hospital notified Veteran's Administration Hospital it would be necessary to have plaintiff transferred.
The medical testimony establishes the following: The purpose of Ringer's solution is to elevate the blood pressure and to prevent or reduce the effects of shock and periodic readings of blood pressure and pulse were necessary in order to determine whether plaintiff had reached a stable level or whether additional corrective measures should be taken; it was medically unwise to administer demerol, or any other form of pain relieving medication, until plaintiff's pressure had reached a stabilized and safe level and until the x-rays had revealed an absence of serious head injury; and it also was medically unwise to repair plaintiff's facial lacerations prior to making certain there were no fractures in that area.
We find no merit in plaintiff's first contention, that he was not given proper emergency treatment and allowed to suffer unattended while in the emergency room awaiting admittance to the hospital. While we can understand how upsetting it must have been to his wife and those accompanying her to see him in his injured condition, the record satisfies us that he was *916 given proper emergency treatment, was attended and, under all of the circumstances involved, was given pain relieving medication when the same was medically advisable. All of the medical evidence in the record is to that effect, including the testimony of plaintiff's medical expert who answered in the affirmative when asked on cross examination whether in his opinion plaintiff had received adequate emergency treatment. That part of the contention to the effect that plaintiff was in the emergency room awaiting admittance to the hospital is factually incorrect. Plaintiff was taken to the emergency room, and remained there, for emergency treatment and not for the purpose of being admitted to the hospital.
Nor is there any merit in plaintiff's second contention, that he was refused admittance to defendant's hospital for purely financial reasons after being led to believe he would be admitted. The record reveals that, in accordance with the defendant hospital's policy and practice, if plaintiff's condition had been such as to require immediate admission to and treatment in the hospital he would have been admitted and treated. But his condition did not require such admission as an emergency measure. The record also reveals that the requirement of a deposit prior to hospital admission is the usual procedure among private hospitals in this area where, as here, the patient has nothing to offer for the purpose of assuring payment of hospital bills. In the absence of an immediate need for emergency hospital treatment the requirement of a deposit prior to hospital admission was neither unreasonable nor improper.
We do not fully understand the third contention relative to failure to advise plaintiff immediately upon his arrival at the emergency room that he would not be admitted to the defendant hospital and that he should seek medical assistance elsewhere. As we have said, plaintiff was brought to the emergency room for emergency treatment and not for the purpose of being admitted to the hospital. Certainly, he cannot reasonably complain that upon his arrival he was given needed emergency treatment and not told to go elsewhere.
The trial court found that: (1) the plaintiff received reasonable and diligent treatment in the emergency room; (2) defendants' failure to admit him as a hospital bed patient was unsupported by any evidence that such action was unjustified or unreasonable; and (3) plaintiff had failed to prove, and had failed to produce any evidence of, any damage to himself as a result of the defendants' alleged negligence. We agree with the first two findings and do not consider the third, not for the reason that we are in doubt about its correctness, but because it is unnecessary to decide whether or not plaintiff actually suffered some damages as a result of the defendants' alleged negligence since we find there was no such negligence.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.